### BARNEY GILLEN'S CASE.

Suffolk. March 14, 1913. — May 24, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Workmen's Compensation Act. Words,* "Average weekly wages."

Under the workmen's compensation act a longshoreman, who was engaged in continuous labor in regular employment with different employers and was injured in the course of his employment with one of them, is entitled to receive, during his total incapacity for work resulting from such injury, a compensation equal to one half the "average weekly wages" earned by him in all of such regular employment and not merely one half of the wages paid to him by the employer in whose service he was injured.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Pierce,* J. The facts are stated in the opinion. The judge made a decree that the findings of fact of the Industrial Accident Board be approved and that in accordance therewith the employee, Barney Gillen, should receive a weekly payment of $6.50 each week during his total incapacity for work. The insurer, the Ocean Accident and Guarantee Corporation, Limited, appealed.

St. 1911, c. 751, Part II, § 9, provides as follows: "While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to one half his average weekly wages, but not more than ten dollars nor less than four dollars a week; . . ."

Other material portions of the statute are quoted or described in the opinion.

*J. T. Connolly,* for the insurer.

*J. E. McConnell,* for the employee.

RUGG, C. J. This is an appeal under the workmen's compensation act. St. 1911, c. 751. The employee, a longshoreman, was injured in the course of his employment by the Canada, Atlantic and Plant Steamship Company, which was insured under the

act with the insurer.   The facts are that the steamship company operates a line between Boston and Halifax, one boat in winter and two boats in summer, arriving at and leaving Boston each week.   The longshoremen in its employ work on an average for fifteen to twenty hours weekly, and receive from it not more than $8 a week.   The employee, like other longshoremen, worked for other employers during a day or group of days, and earned by the year by his services an average weekly wage of $13, which was the average weekly wage earned by other longshoremen in the same class of employment in the same district.   The insurer contends that the employee was not a regular employee of the steamship company, and that his average weekly wages must be the average amount per week which during the twelve months previous to the injury was being earned by a person in the same grade, employed at the same work by the same employer.   If this contention is sound, the employee would be entitled to $4 per week.   The employee contends, however, that, inasmuch as he worked continuously at his occupation as longshoreman for different employers according to the custom of his craft, he is entitled to receive $6.50, being one half his average weekly earnings as longshoreman from all sources.

The decision depends upon the meaning of "average weekly wages" and the method of their ascertainment as set out in Part V, § 2 of the act.   "Average weekly wages" are there defined to mean "earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period then the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted."   It is apparent both from its phrase and its context that this sentence applies to a continuous employment throughout the year.   While the language is not amplified, it refers to substantially uninterrupted work in a particular employment from which the wages of the employee are derived.   The basis is the earning capacity of the workman as shown by such employment.   The next clause of the section is, "Where, by reason of the shortness of the time during which the employee has been in the employment of his employer, or the

nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer." This clause provides a method for the determination of average weekly wages where the employee for the reasons stated has not been in the service for a year, by reference to the wages of others whose employment is substantially continuous. It affords a guide by which to estimate the compensation to be paid to the employee where there are those in the service of the same employer continuously employed in the same grade at the same kind of work. It is apparent that this clause does not cover the employee's case, because there is no substantially continuous employment of longshoremen by this steamship company during the year. It is obvious from the broad scope of the act and its comprehensive dealing with the whole subject that it was intended to provide for the employee as compensation within the limits specified therein a definite proportion of the amount which he earned weekly. It cannot be presumed that the Legislature intended to offer a scheme of accident insurance which would be illusory or barren to large numbers of workmen. "Weekly wages" as used in the first sentence quoted above plainly means all the wages which the employee received in the course of a permanent employment, which are all the wages he receives. Where words are used in one part of a statute in a definite sense it may be presumed, in the absence of a plain intent to the contrary, that they are used in the same sense in other places in the same act. Therefore, we reach the conclusion that average weekly wages as used in the clause of the act last quoted was not intended to apply to recurrent periods of brief service at regular intervals, in cases where the entire time of the workmen is devoted to like employment for other employers in the same general kind of business. The final clause of the paragraph defining average weekly wages is as follows: "or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district." This clause affords reference to a general average of like employment in the neighborhood as a standard to be considered. It does not restrict consideration

of the matter to the same employer.   It applies to a case like the present, where the custom of the employment is for continuous work of a specified kind for different employers.

While the language of the definition is not so clear as might be desired, it seems to us to be intended to include in abridged form parts of (1) (b) and (2) (a) and (b) of the first schedule of the English workmen's compensation act, 6 Edw. VII (1906), c. 58. It is true that (2) (b) of the English schedule covers a case like the present in express language.   But the English act is more minute in many of its provisions, and our act resembles the present English act far more closely than it does the earlier one of St. 60 & 61 Vict. c. 37.   Although not stated in precise words, we think that the general import of the act is to base the remuneration to be paid upon the normal return received by workmen for the grade of work in which the particular workman may be classified.   This is a case where it is "impracticable" to reach a result which shall be fair to the workman to the extent intended by the act of giving him compensation for average weekly earnings in any other way than by following the course pointed out in the final clause of the definition.   See *Perry* v. *Wright*, [1908] 1 K. B. 441; *Anslow* v. *Cannock, Chase Colliery Co.* [1909] 1 K. B. 352; *S. C.* [1909] A. C. 435.

This is not a case where the usual employment of the employee is only two or three days in a week as pointed out in *White* v. *Wiseman*, [1912] 3 K. B. 352, 359, but a case where the condition of the workman is continuous labor in regular employment with different employers.   The loss of his capacity to earn, as demonstrated by his conduct in such regular employment, is the basis upon which his compensation should be based.

*Decree affirmed.*