Argued and submitted February 22, reversed and
remanded with instructions March 22, 1982

In the Matter of the Compensation
of Harold B. Looper, Claimant.

LOOPER,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 78-5162, CA A22227)

642 P2d 325

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant appeals from an order of the Workers' Compensation Board (Board) reversing the referee's award of permanent total disability and awarding claimant 75 percent scheduled disability for his left leg, 40 percent scheduled disability for his left arm, and 25 percent unscheduled disability for problems involving his head and trunk area. We review *de novo*.

Since 1936, claimant has worked as co-owner and "outside" manager of a small oil products distributing company. On August 1, 1975, the tank truck claimant was driving collided with a logging truck, as a result of which claimant suffered a concussion, a basal skull fracture, a crushed rib cage on his left side with a torn and collapsed left lung requiring a chest tube, a shattered left leg below the knee requiring a complete knee replacement, and a thoracic outlet problem with his left shoulder and arm, requiring surgical removal of the one unbroken rib on his left side.

At the time of the injury, claimant was a healthy man of 58 years capable of performing vigorous physical labor. After the accident, claimant was left with several substantial impairments. We base our findings on the medical reports and on the testimony of claimant and his wife, whom the referee found to be "totally credible" witnesses. Claimant's rib cage area healed abnormally, causing grating sensations with movement; he has constant pain, which is intensified by sitting for more than one-half hour, by any lifting or by walking more than a block. His left arm is clumsy and very weak; his hand cannot be used effectively for manipulation, and merely holding an object requires concentration. His left leg is 1-3/4 inches shorter than his right one, requiring claimant to wear a built-up left shoe; he suffers constant pain in his leg. Claimant's tolerance level for standing is from one-half to one hour. He is unable to bend, squat, crawl or climb. His leg problems have caused several falls. He also has nodules around his knee, which are exquisitely tender and easily irritated. His left hip is painful when he walks.

Because of an enlarged kidney, claimant's medication was reduced, but even the reduced dosage causes some

dizziness and ringing in his ears. Because of pain, and despite the medication, claimant finds it necessary to rest for an hour and a half each mid-day, lying on his back. Since the accident, claimant has experienced frequent memory loss and finds it difficult to concentrate. The accident and its aftermath have also had an effect on his personality; claimant's wife testified that petty irritations now upset him to the point of near violence.

At the hearing, a vocational expert testified that within medically documented restrictions,[1] claimant could perform the jobs of parking lot attendant, gate tender, hotel-motel clerk and answering service operator. The expert conceded, however, that if claimant found it necessary to rest one and one half hours in the mid-day, he could not regularly perform any of the suggested jobs. The referee stated that he was not convinced by the testimony of the vocational expert that claimant could function in any job on a regular basis.

In reversing the referee's finding of permanent total disability, the Board concluded that claimant was not totally incapacitated as a medical or physical matter and that he had not met the burden of satisfying ORS 656.206(3).[2] The Board was persuaded by the vocational expert that claimant was capable of performing certain jobs; it emphasized that claimant testified he has made no attempt to find work. Claimant also testified, however, that he has been in too much pain to seek work. Moreover, the vocational expert did not take into account claimant's age and additional work restrictions caused by the pain.

In our view, it would be unrealistic to say that this man (63 years old at the time of the hearing) with a 10th-grade education has a reasonable expectation of being able to sell his services to an employer. *Wilson v. Weyerhaeuser*, 30 Or App 403, 412-13, 567 P2d 567 (1977). Under the

---

[1] Under one doctor's set of restrictions, claimant could sit for two hours, stand for two hours, and walk for one hour during the course of a work day, lift 11 to 20 pounds occasionally, but could carry no weight.

[2] ORS 656.206(3) provides:

"(3) The worker has the burden of proving permanent total disability status and must establish that he is willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment."

circumstances, it would have been futile for claimant to have attempted to find employment. *Morris v. Denny's,* 50 Or App 533, 538, 623 P2d 1118 (1981); *Butcher v. SAIF,* 45 Or App 313, 317, 608 P2d 575 (1980). Claimant has sustained his burden of proving that he is permanently incapacitated from regularly performing work at a gainful and suitable occupation. ORS 656.206(1)(a).[3]

Reversed and remanded with instructions to reinstate the referee's award of permanent total disability.

---

[3] ORS 656.206(1)(a) provides:

"(1) As used in this section:

"(a) 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which he is able to perform after rehabilitation."