Argued and submitted March 6, affirmed June 25, reconsideration denied
August 8, 1985

In the Matter of the Compensation
of Ralph R. Cutright, Claimant.

CUTRIGHT,
*Petitioner on Review,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent on Review.*

(WCB 80-06928; CA A29177)

In the Matter of the Compensation
of Agnes J. Brech, Claimant.

BRECH,
*Petitioner on Review,*

*v.*

RIVER SHORE MOTEL et al,
*Respondents on Review.*

(WCB 81-00582; CA A29279)
(SC S31315)
(Cases consolidated)
702 P2d 403

Robert K. Udziela, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, argued the cause and filed the petition for petitioners on review.

Paul L. Roess, of Foss, Whitty & Roess, Coos Bay, argued the cause for respondent on review Weyerhaeuser Company.

Allan M. Muir, Portland, argued the cause and filed a brief for respondents on review River Shore Motel and Insurance Company of North America. With him on the response to the petition for review were Schwabe, Williamson, Wyatt, Moore & Roberts, Ridgway K. Foley, Jr., P.C., and Dennis S. Reese, Portland.

Jerald P. Keene, of Roberts, Reinisch & Klor, P.C., Portland, filed an *amicus curiae* brief on behalf of the Association of Workers' Compensation Defense Attorneys.

JONES, J.

Lent, J., filed a dissenting opinion joined by Campbell, J.

**JONES, J.**

The issue is whether workers' compensation claimants are entitled to temporary total disability[1] benefits for aggravation of their original compensable injuries, where the claimants had voluntarily removed themselves from the labor market, *i.e.*, "retired," at the time of the aggravation of their prior work-related injuries. We hold that the claimants are not entitled to compensation for temporary total disability.

In these consolidated cases, the facts are undisputed. In each case the claimant sustained a disabling compensable injury.[2] In each case the claimant was awarded compensation for both scheduled and unscheduled permanent partial disability. In each case the claimant's condition worsened to the point that surgery was necessary, and the claimant was unable to perform work at a gainful and suitable occupation for at least the period encompassing the surgery. In each case the claimant had voluntarily left the labor force at the time the prior condition worsened and surgery became necessary. In each case the claimant had not left work because of the aggravation of the prior injury. In each case the claimant applied for additional compensation for temporary total disability (TTD) and for medical services because of the worsening. ORS 656.273(1).[3] In each case the employer accepted responsibility for payment of necessary medical services but denied responsibility for the payment of compensation for TTD because the claimant was no longer in the labor market by the time the claimant applied for compensation for TTD.

In each case the claimant requested a hearing on the denial, and the referee ordered the employer to pay compensation for TTD. In each case the employer appealed, and the Workers' Compensation Board reversed the referee's decision.

---

[1] The term "temporary total disability" is used in ORS 656.210(3) to describe "the total disability [which] is only temporary" mentioned in ORS 656.210(1).

[2] ORS 656.005(8)(b) provides:

"A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death."

[3] ORS 656.273(1) provides:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury."

On judicial review the cases were consolidated pursuant to ORAP 6.30, and the Court of Appeals affirmed *per curiam*. We allowed review to consider the issue posed at the outset of this opinion.

The employers argue that TTD benefits are payable as compensation for the "loss of wages" and one who has retired does not lose wages when his condition worsens to the point of unemployability; therefore, argue the employers, that claimant is not entitled to compensation for TTD.[4] The employers argue that our decision in *Bono v. SAIF,* 298 Or 405, 692 P2d 606 (1984), holds that a worker must "leave work" in order to be entitled to compensation for TTD and, therefore, because these claimants were not working when their conditions worsened to the point of unemployability, they are not entitled to compensation for "loss of wages."

The claimants argue that under ORS 656.273(1), because their respective conditions have worsened since their last awards of compensation, they are entitled to additional compensation, and because it is undisputed that their surgeries will result in a period of complete inability to work, they are entitled to compensation for TTD. They assert that the language of ORS 656.210(1) so commands:

> "When the total disability is only temporary, the worker shall receive during the period of that total disability compensation * * *."

The Workers' Compensation Law does not contain a definition of "total disability" or of "temporary total disability." The law does contain a definition of "permanent total disability" in ORS 656.206(1)(a):

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. * * *"

---

[4] The employer of Brech further contends that the case of *Stiennon v. SAIF,* 68 Or App 735, 683 P2d 556, *rev den* 298 Or 238 (1984), presented the identical issue to these cases and, therefore, review in these cases was improvidently granted and this court should not consider them. It should be clear since our decision in *1000 Friends of Oregon v. Bd. of Co. Comm.,* 284 Or 41, 584 P2d 1371 (1978), that our denial of a petition for review carries no indication that this court considers the decision of the Court of Appeals to be correct.

As part of the explanation of "permanent total disability," ORS 656.206(3) provides:

> "The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

ORS 656.210(1) uses the term "the total disability" but does not specifically instruct the reader where the referent for the term is to be found. The use of the definite article leads us to conclude that the term speaks to "total disability" as used elsewhere in the Workers' Compensation Law.

The present Workers' Compensation Law derives from Oregon Laws 1913, chapter 112, and section 21 thereof fixed the schedule of compensation to be paid under the law. Subsection 21(b) defined "permanent total disability" and the amounts to be paid for such disability. Subsection 21(c) specified that if the worker died during "such period of total disability" beneficiaries were to recover certain compensation. Subsection 21(d) pronounced that when "the total disability" was only temporary, the worker was to receive benefits that were calculated on the basis of the schedule set forth in subsection 21(b) relating to permanent total disability. That history and the continued juxtaposition of these provisions cause us to conclude that the most likely referent is for "the total disability" now to be found in ORS 656.206(1)(a).

■ ■   We construe "the total disability" used in ORS 656.210(1) to mean the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which incapacitates the worker from regularly performing work at a gainful and suitable occupation. Total disability describes the extent of disability that a worker may suffer. "Permanent" or "temporary" describes duration, not the extent, of disability. If the total disability is permanent, payment of compensation is made according to ORS 656.206; if the disability is temporary, payment is made according to ORS 656.210. In either case, benefits for total disability are only available where the requisite incapacity to work exists.

The employers argue that *Bono v. SAIF, supra,* holds that to be entitled to compensation for TTD one must leave work. In that case a worker sought "interim compensation"

under ORS 656.262(4)[5] and our decision in *Jones v. Emanuel Hospital,* 280 Or 147, 570 P2d 70 (1977). As noted in *Bono,* the term "interim compensation" is one coined by this court in *Jones. See Bono v. SAIF,* 298 Or at 407 n 1. In *Bono* we observed that interim compensation is related to compensation for TTD in that the rates of compensation are similarly calculated. Noting that ORS 656.210(3)[6] requires that a worker must leave work to trigger payment of compensation, we then stated:

> "* * * The payment of temporary total disability benefits is based in part upon whether the injured worker 'leaves work.' ORS 656.210(3). Interim compensation is based on temporary total disability benefits. Thus, we hold that in order to receive interim compensation, a subject worker must have left work as that phrase is used in ORS 656.210(3). * * *" 298 Or at 410.

The holding in that case is simply that a worker cannot receive interim compensation during a period of time in which the worker is actually working. There is nothing in that holding from which we desire to retreat; there is nothing in that holding which governs the case at bar.

■      The entire scheme of Workers' Compensation Law is to compensate *workers,* who are active in the labor market, for wages lost because of inability (or reduced capacity) to work as a result of a compensable injury and to pay for medical expenses incurred in treatment of injury. The name of the act itself, proclaimed by ORS 656.001, indicates who is to be covered — "workers." "Worker" is defined as

> "* * * any person, including a minor whether lawfully or unlawfully employed, *who engages to furnish services for a*

---

[5] ORS 656.262(4) provides:

"The first instalment of compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim. Thereafter, compensation shall be paid at least once each two weeks, except where the director determines that payment in instalments should be made at some other interval. The director may by rule convert monthly benefit schedules to weekly or other periodic schedules."

[6] ORS 656.210(3) provides:

"No disability payment is recoverable for temporary total disability suffered during the first three calendar days after the worker leaves work as a result of his compensable injury unless the total disability continues for a period of 14 days or the worker is an inpatient in a hospital. If the worker leaves work the day of the injury, that day shall be considered the first day of the three-day period."

*remuneration,* subject to the direction and control of an employer and includes salaried, elected and appointed officials of the state, state agencies, counties, cities, school districts and other public corporations, but does not include any person whose services are performed as an inmate or ward of a state institution." ORS 656.005(28) (emphasis added).

There is not one word in the statute that refers to a person who no longer engages in furnishing services for remuneration. Certainly, one who retires voluntarily from the work force is no longer a "worker" as defined.

The stated policy of the legislature is set out in ORS 656.012 and includes a declaration of the objectives of the Workers' Compensation Law. ORS 656.012(2) provides:

"* * * [T]he objectives of the Workers' Compensation Law are declared to be as follows:

(a) To provide, regardless of fault, sure, prompt and complete medical treatment for injured workers and fair, adequate and reasonable income benefits to injured workers and their dependents;

(b) To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable;

(c) *To restore the injured worker physically and economically to a self-sufficient status* in an expeditious manner and to the greatest extent practicable; and

(d) To encourage maximum employer implementation of accident study, analysis and prevention programs to reduce the economic loss and human suffering caused by industrial accidents." (Emphasis added.)

The thrust of the act is to restore injured workers to employment status, and the act also provides coverage for those apprenticing or training for work. *See* ORS 656.138(1).[7]

---

[7] ORS 656.138(1) states:

"All persons registered as apprentices or trainees and participating in related instruction classes conducted by a school district, community college district or education service district in accordance with the requirements of ORS chapter 660 or section 50, title 29, United States Code as of September 13, 1975, are considered as workers of the school district, community college district or education service district subject to ORS 656.001 to 656.794."

■  That the legislature intended workers' compensation benefits to provide wage replacement is made clearer by the statutes providing for compensation for injured workers or their beneficiaries. ORS 656.204(2) states that "[i]f death results from the accidental injury, payments * * * shall be paid in an amount equal to 4.35 times 50 percent of the average weekly wage to the surviving spouse until remarriage." Thus, death benefit compensation is based on wage replacement.

Under ORS 656.206(2), the formula for calculating permanent total disability benefits is based on wage replacement:

"(2)(a)  When permanent total disability results from the injury, the worker shall receive during the period of that disability compensation benefits equal to 66-2/3 percent of wages not to exceed 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50, whichever amount is lesser.

"(b)  In addition, the worker shall receive $5 per week for each additional beneficiary not to exceed five. * * *"

The calculation of TTD benefits under ORS 656.210(1) is also based upon wage replacement:

"When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages * * *."

ORS 656.268(1), which sets forth the procedure for determining awards for permanent disability, emphasizes that "[o]ne purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker." As we have noted, a worker is one who engages in furnishing services for remuneration.

ORS 656.287(1) provides:

"Where there is an issue regarding loss of earning capacity, reports from vocational consultants in governmental agencies or private vocational consultants *regarding job opportunities, the fitness of claimant to perform certain jobs, wage levels, or other information relating to claimant's employability* shall be admitted into evidence at compensation hearings * * *." (Emphasis added.)

**29**

Additionally, Oregon Laws 1981, chapter 535, section 2, provides:

"(1)   The insurer or self-insured employer of an injured worker shall be responsible for contacting the worker within five days after:

(a)   Receipt of a medical report which indicates that the worker may be unable to return to work for a period of 21 days or longer; or

(b)   The worker has been off work for more than 21 consecutive days since the date of injury,

and *shall assist the worker in returning to the work force* for a gradual, intermittent or immediate return to regular, modified or other available employment. Each insurer and self-insured employer shall maintain records of such contacts and assistance in such manner as the department, by rule, may prescribe.

"(2)   The insurer or self-insured employer *shall assist the worker in returning to the worker's previous employment.* If the worker is not able to return to the previous employment, the insurer *or* self-insured employer *shall assist the worker in obtaining similar or suitable employment.*

"(3)   Assistance under this section shall include, but not be limited to use of the insurer's or self-insured employer's placement and rehabilitation resources, job search, on-the-job placement and contracting with the Vocational Rehabilitation Division of the Department of Human Resources or with suitable private rehabilitation services for the purpose of reemploying the worker at a position or a wage as close as possible to the worker's occupation or employment at the time of injury. All vocational assistance services provided to injured workers shall be in accordance with rules prescribed by the director." (Emphasis added.)

Although this section was not operative until July 1, 1984, Or Laws 1981, ch 535, § 26(2), its adoption by the 1981 legislature is an indication of the legislature's construction of the act.

Finally, of greatest significance is ORS 656.325(5), which provides:

"Notwithstanding ORS 656.268, an insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 *when an injured worker refuses wage earning employment* prior to claim

determination and the worker's attending physician, after being notified by the employer of the specific duties to be performed by the injured worker, agrees that the injured worker is capable of performing the employment offered." (Emphasis added.)

As applied to aggravation claims, this statute dictates that a worker receiving TTD benefits must not refuse wage earning employment prior to the aggravation claim determination if the worker is capable of working. Thus, a claimant who has retired from the labor market cannot qualify for TTD benefits because of the claimant's decision to refuse further wage earning employment. Further, ORS 656.206(3) requires a worker seeking permanent total disability compensation to prove a willingness to seek regular employment and to make reasonable efforts to obtain such employment. Surely, if a worker claiming permanent total disability status must demonstrate a willingness to work, a claimant seeking compensation for aggravation of a pre-existing injury must similarly prove a willingness to seek work in order to obtain TTD benefits under ORS 656.325(5). Again, we emphasize that "total disability" is an inability to *work,* either temporarily or permanently.

The dissent disagrees with this determination, labeling it "pure *ipse dixit.*" This disagreement is based on the 1948 case of *Lindeman v. State Indus. Acc. Comm.,* 183 Or 245, 192 P2d 732 (1948), in which this court said in *dictum* that under the now defunct Oregon Workmen's Compensation Act "the loss of capacity to earn is the basis upon which compensation should be based." 183 Or at 250. The dissent urges us to bow to the doctrine of *stare decisis* and to decide the present case under the rationale of *Lindeman.* Neither the doctrine of *stare decisis* nor the application of sound legal reasoning supports the dissent's view.

The "loss of earning capacity" referred to in *Lindeman* is only a factor used to measure the extent of disability in the determination of benefits for temporary *partial* disability, ORS 656.212, and permanent *partial* disability, ORS 656.214. ORS 656.212 provides:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments

provided for temporary total disability which his loss of earning power at any kind of work bears to his earning power existing at the time of the occurrence of the injury."

ORS 656.214(5) provides:

"In all cases of injury resulting in permanent partial disability, * * * the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. *Earning capacity is the ability to obtain and hold gainful employment* in the broad field of general occupations, taking into consideration such facts as age, education, training, skills and work experience. * * *" (Emphasis added.)

This definition does not help the claimants. Earning capacity only goes to the extent of disability. Loss of earning capacity can only be determined in the context of the claimant's ability to work; it is not, by itself, an independent kind of injury for which compensation is provided.

■ "*Ipse dixit*" is defined in Black's as "a bare assertion resting upon the authority of an individual." Black's Law Dictionary 743 (5th ed 1979). Our decision of the present case relies not upon an assertion of any individual, but upon an examination of the legislative statements made in the Workers' Compensation Law as it applies to the instant cases. We decline the opportunity to rely upon prior language of this court laid out in *dictum* in a case construing a statute which no longer exists. Our present holding that TTD benefits are wage replacement for those persons working or seeking work is based upon our analysis of the pronouncements of the legislature, not upon an engrafting of an earlier questionable pronouncement of this court.

The legislature adopted the present workers' compensation scheme after extensive hearings and testimony by representatives of employes, employers and insurance carriers. This resulted in a "statement * * * by the legislature after an opportunity of the people of this state to present their divers views to the legislature" as is urged by the dissent. Contrary to the view expressed in the dissent, this process has already occurred and the legislation as passed does not provide the relief sought by the present claimants. Comments regarding the wisdom or propriety of that choice, absent any constitutional infirmity, should be addressed to the legislature, not this court. As we have shown, the pronouncements of the

legislature found in the *present* Workers' Compensation Law applicable to the *present* case, are more compelling to our resolution of this case than is *dictum* from a 37-year-old case decided under a now defunct statute.

A claim for temporary total disability benefits in the absence of wage loss seeks a remedy where there is no damage. Non-workers can sustain medical expenses. They cannot lose earnings.

■ Temporary disability benefits are maintenance benefits intended to provide support and help replace lost income during the healing or recovery process.

■ Under the circumstances of these consolidated cases, the claimants are not entitled to temporary total disability benefits. The Court of Appeals is affirmed.

**LENT, J.,** dissenting.

I agree with the majority that "total disability" as used in ORS 656.210(1) means

> "the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which incapacitates the worker from regularly performing work at a gainful and suitable occupation."

I further agree that when the loss is permanent the worker is permanently totally disabled and that when the loss is only temporary the worker is temporarily totally disabled. I further agree that our decision in *Bono v. SAIF,* 298 Or 405, 692 P2d 606 (1984), does not govern the case at bar.[1] I also agree that if the total disability is permanent, payment is made according to ORS 656.206 and that if the total disability is temporary, payment is made according to ORS 656.210. I have now listed all that is in the majority opinion with which I can agree.

First, I wish to draw attention to the main theme underlying the majority opinion. The rest of the opinion is nothing but an attempt to find an underpinning for the result

---

[1]The majority's quoted material from *Bono v. SAIF,* 298 Or 405, 410, 692 P2d 606 (1984), stops just short of an intendedly significant statement in *Bono.* Immediately following the majority's quotation is the following sentence:

> "Claimant did not establish that he had been absent from work *nor that his earning power was diminished.*" (Emphasis added.)

already expressed. The majority states that the "purpose" of temporary total disability compensation is to replace wages lost by a worker who is still in the labor market. One would expect to find some decision of this court, some words of the statute or some legislative history for that statement. One searches the majority opinion in vain for that support. The statement is pure *ipse dixit.* If that is legislative policy, the statement should be made by the legislature after an opportunity of the people of this state to present their divers views to the legislature. It surely cannot be a statement by this court, in its infinite wisdom, on the basis of briefs by none but the parties (and their supporters, linked in interest).

The majority questions the teaching of this court's pronouncement 35 years ago in *Lindeman v. State Indus. Acc. Comm.,* 183 Or 245, 192 P2d 732 (1948), where this court stated:

> "The Oregon Workmen's Compensation Act provides primarily for three types of compensation to be paid to employees covered by the act (or to their beneficiaries or dependents in case of death) for injuries arising out of and in the course of their employment. They are:
>
> "(1) Compensation for disability, dependent as to amount upon whether the injury produces a permanent total, a temporary total, or a temporary partial disability. §§ 102-1756, 102-1758, and 102.1759, O.C.L.A.
>
> "(2) Compensation in stipulated amounts for loss of some part of the body, such as an arm, a leg, or an eye, and 'other cases of injury resulting in permanent partial disability'. § 102-1760, O.C.L.A.
>
> "(3) Compensation for death. §§ 102-1755, 102-1757, and 102-1761, O.C.L.A.
>
> "The statute provides no compensation for physical pain or discomfort. It is limited to the *loss of earning ability. The loss of capacity to earn is the basis upon which compensation should be based. Weber v. American Silk Spinning Co.,* 38 R.I. 309, 95 A. 603, Ann. Cas. 1917E 153; *Gillen v. Ocean Accident & Guarantee Corp.,* 215 Mass. 96, 102 N.E. 346, L.R.A. 1916A 371." (Emphasis added.)

183 Or at 249-250. Even if it be argued that the quoted material was dictum or the same kind of statement of policy made by the majority in this case, it was a statement that

governed the trials of some 17 years of workers' compensation cases. It was a statement embodied in the charges to juries. It was a statement that purported to interpret the statute. It was a statement accepted as a premise both by those in favor of, and those opposed to, the 1965 revision of the law. Regard for the doctrine of *stare decisis* should persuade the majority to abandon its holding.

In *Lindeman* this court noted that under § 102-1752, OCLA, a worker injured on the job was to be compensated for his disability. That section provided:

> "Every workman subject to this act while employed by an employer subject to this act who, while so employed, sustains personal injury by accident arising out of and in the course of his employment and *resulting in his disability* * * * shall be entitled to receive from the industrial accident fund * * * the sum or sums hereinafter specified * * *." (Emphasis added.)

A related section, § 102-1754, provided:

> "If any workman while he is subject to this act and in the service of an employer * * * shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he * * * shall receive compensation as hereinafter provided."

Then followed the sections providing, in order for the calculation of benefits to be paid for death, permanent total disability, death during permanent total disability, temporary total disability, temporary partial disability and permanent partial disability.

The majority states that the "loss of earning capacity," to which *Lindeman* refers, is only a factor with respect to temporary *partial* disability and permanent *partial* disability. I respectfully draw the attention of the majority to the language above quoted from *Lindeman*. The language is not limited to partial disability.

The majority states that the statute to which *Lindeman* spoke "no longer exists" and is "now defunct." I invite the majority to compare ORS 656.202 to 656.214 with the sections of Oregon Compiled Laws Annotated to which *Lindeman* and I have referred, *supra*. ORS 656.202 provides that a

subject worker who sustains a "compensable injury"[2] shall receive compensation as provided in ORS 656.001 to ORS 656.794. Then follows, in order, just as in Oregon Compiled Laws Annotated, the method of calculating benefits to be paid for death, permanent total disability, death during permanent total disability, temporary total disability, temporary partial disability and permanent partial disability.

The majority is considerably taken with the fact that ORS 656.210 bases compensation for temporary total disability on a percentage of wages. Lo and behold! So did that "defunct" statute, § 102-1758, OCLA.

The statutes to which *Lindeman* spoke seem to be alive and well. The present codification is consonant. A worker is compensated for partial or total disability, temporary or permanent. ORS 656.210 provides explicitly that if the worker's total disability is only temporary, the worker is to receive a certain percentage of weekly wage "the worker was receiving at the time of his injury." The majority simply fails to address the fact that both of the workers with whom we are here concerned were actually working at the time of injury and that ORS 656.210 does no more and no less than to say that a worker who is temporarily totally disabled "shall receive" a percentage of the wage being earned at the time of the injury. No statute concerning temporary total disability states that the worker must "still be in the labor market" to receive compensation for that condition of unemployability resulting from industrial injury defined by both the majority and this opinion.

The majority justifies its usurpation of legislative function by resort to ORS 656.206(3), which requires a worker to prove "that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment" in order to prove "permanent total disability status." The majority says that ORS

---

[2] ORS 656.005(8) defines "compensable injury."

"(a) A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death; * * *.

"(b) A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death."

656.206(3) is an "explanation" of permanent total disability. ORS 656.206(3) is nothing more than a statement by the legislature that a worker must satisfy a certain condition precedent to achieve a "status" that will allow him to receive the compensation for permanent total disability to which he may be otherwise entitled.

Before turning to the possibility that these workers in the case at bar must satisfy the requirements of ORS 656.206(3), I desire to point out the total want of legislative indication that the subsection is to be considered in connection with compensation for temporary total disability.

The legislature has given some attention to offsetting certain social security benefits against the amount of compensation for permanent total disability to which a worker might be entitled. In ORS 656.209 the legislature has addressed the case of the worker who is receiving "disability" benefits from federal social security. Surely when that legislation was considered in 1977 and 1979, it could not have escaped legislative attention that there should be a similar offset for receipt of old age social security benefits by a worker who was permanently totally disabled, but the legislature did not provide for one to lose all or any part of compensation for permanent total disability because one was receiving old age social security benefits and, therefore, not "still in the labor market."

If the legislature did not see fit to eliminate compensation for permanent total disability for old age "retirement" benefits, what suggests that the legislature intended to do so for those entitled to temporary total disability compensation by reason of being incapacitated to the extent mentioned at the outset of this opinion?

Because the majority desires to make ORS 656.206(3) a touchstone for entitlement to compensation for temporary total disability, I believe that the majority must have a longer, harder look at that subsection in order to reach the result that it does here.

That text requires that a worker must show his willingness and his efforts to find employment to gain the "status" of permanent total disability as defined in ORS 656.206(1). When must he show that? He must do so at the time he is seeking adjudgment that he is permanently totally

disabled. This court has not addressed this condition precedent. The Court of Appeals has. That court has logically reasoned that a worker who is so incapacitated that motivation and seeking work would be "futile" need not undertake the fruitless task. *See,* for example, *Brech v. SAIF,* 72 Or App 388, 695 P2d 964 (1985), where the court held:

> "The second basis for the referee's denying permanent total disability is claimant's alleged failure to comply with the requirement of ORS 656.206(3) that a claimant prove 'that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment.' Claimant's failure to seek employment is not unreasonable when, in view of his disabilities, such efforts would be futile. *Hanna v. SAIF,* 65 Or App 649, 654, 672 P2d 67 (1983); *Looper v. SAIF,* 56 Or App 437, 441, 642 P2d 325 (1982). The evidence establishes that claimant cannot perform regular gainful employment; because he is permanently totally disabled from a physical standpoint, it is unnecessary for him to undertake the futile effort of seeking employment."

72 Or App at 391. I find it difficult to believe that the majority would quarrel with the line of decisions that the Court of Appeals has developed in this respect.

The majority would apply ORS 656.206(3) to entitlement to compensation for temporary total disability. Although I do not believe that is the proper course, I invite the majority to carry its desire to the logical result forecast by the Court of Appeals decisions with respect to entitlement to compensation for permanent total disability.

The plain fact of the matter is that both of the claimants at bar will not be able to work at least during the time of surgery. It is during that time that these claimants ask for the compensation for their unemployability. It would be futile indeed for them to seek employment from the hospital bed. That is the time period with which these cases are concerned, not some time either before or after that period in which it is conceded and agreed that they will not be able to work because of worsening of their conditions resulting from their original injuries.

The majority has taken the policy statement contained in ORS 656.012(2), the definition of "worker" in ORS 656.005(28), ORS 656.287(1), an evidentiary section, and a

section, ORS 656.340, mandating the employer to do certain things, and from that holds that these claimants are not entitled to compensation for a period of time during which their worsened conditions will make them totally disabled, as defined, at least temporarily.

As to ORS 656.012(2), I can only again express the idea that a preamble in general terms should not control over explicit textual language found elsewhere in the Workers' Compensation Law.

As to definition of "worker," the definition contained in ORS 656.005(28) is obviously for the purpose of triggering coverage under the law. ORS 656.003 explains that the definitions apply except where the context otherwise requires. The word "worker" is used throughout ORS 656.001 to 656.794 in senses that make it perfectly obvious that it is not used to mean one who is working. I am not going to list them all. Some of the sections with which we are here most closely concerned demonstrate the fact. ORS 656.206(2) to (5) speak to a "worker" who is permanently totally disabled. ORS 656.208 concerns the "worker" who dies during the period of permanent total disability. Even ORS 656.210 provides for a "worker" to receive compensation for temporary total disability. One who is totally disabled, permanently or totally, cannot meet the definition given in ORS 656.005(28).

ORS 656.287(1) does no more than to make admissible certain evidence where there is an issue regarding "loss of earning capacity," something the majority contends is not involved in this case.

ORS 656.340 imposes a variety of duties on an employer or its insurer to assist a "worker," who, incidentally, is obviously not working and, therefore, cannot meet the definition of "worker" in ORS 656.005(28).

The majority finds that "of greatest significance" is ORS 656.325(5), a subsection that entitles an employer to cease paying compensation for temporary total disability and commence paying compensation for temporary partial disability "when an injured worker refuses wage earning employment prior to claim determination" if the worker is capable of performing the employment offered.

This subsection is not applicable at all. Claim determination for these claimants occurred long ago. There is not one bit of evidence in the record that either of these claimants has been offered, and has refused, wage earning employment. I daresay that no employer of sound mind would offer wage earning employment to one confined to the hospital bed or its equivalent while undergoing or recovering from surgery.

Under statutory text these workers are entitled to the compensation they here seek. It is a mistake to inject into the statutory scheme the views of the majority of this court as to what the law ought to be, but is not.

Campbell, J., joins in this dissenting opinion.