In the Matter of the Compensation of
William D. Davis, Claimant.
CHAPEL OF MEMORIES et al,
*Petitioners,*

*v.*

DAVIS,
*Respondent.*
(WCB 86-06476; CA A44676)
754 P2d 913

David O. Horne, Beaverton, argued the cause and filed the brief for petitioners.

James L. Edmunson, Eugene, argued the cause for

respondent. With him on the brief were Karen M. Werner and Malagon & Moore, Eugene.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

WARDEN, P. J.

Graber, J., concurring in part; dissenting in part.

## WARDEN, P. J.

In this workers' compensation case, the Board ordered the claim reopened and the payment of temporary total disability (TTD) benefits. Employer petitions for judicial review, contending that claimant is not entitled to TTD benefits because he has withdrawn from the work force. On *de novo* review, we affirm.

Claimant sustained a low back injury in December, 1982, while working for employer as a grave digger. He has not worked since the injury. In April, 1984, he was awarded 60 percent unscheduled permanent partial disability benefits by a stipulated order. In May, and again in August, 1985, Dr. Smith, a neurologist, requested authorization from employer's insurer, Wausau Insurance Companies (Wausau), to perform lumbar surgery. In October, Wausau denied the compensability of the surgery and also denied claimant's aggravation claim. Claimant requested a hearing and, in March, 1986, a referee upheld the denial of the aggravation claim but set aside the denial of compensability of the surgery. The surgery was performed on May 1. Claimant then sought, and Wausau denied, claim reopening and TTD benefits for the period of his post-surgical convalescence. On August 15, 1986, another referee ordered the claim reopened and awarded TTD benefits, a penalty and attorney fees. Employer requested Board review, and the Board affirmed and adopted the referee's opinion and order.

Employer implicitly concedes that claim reopening was appropriate. Claimant has established that his condition worsened after, and as a result of, the surgery. *See Gwynn v. SAIF,* 304 Or 345, 353, 745 P2d 775 (1987). He is therefore entitled to have his claim processed to closure, when his disability will be reevaluated. ORS 656.268.

■ The disputed issue is whether claimant is entitled to TTD benefits during his post-surgical convalescence. Employer contends that he withdrew from the work force before his surgery and is therefore ineligible for TTD benefits.[1] To be entitled to TTD benefits, a claimant must suffi-

---

[1] Employer contends that the "retirement" issue was resolved in its favor in the March, 1986, hearing, thus barring relitigation of the issue in the August, 1986, hearing. However, whether claimant had withdrawn from the work force was not an

ciently demonstrate a willingness to seek work. *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 300, 702 P2d 403 (1985).

■      Claimant is now 63 years old, has an eighth grade education and is hard of hearing. He stopped actively seeking employment in April, 1985. In the March, 1986, hearing, he testified that he had not looked for work since that time, because his back "bother[ed him] so bad [*sic*] that [he] couldn't." He also testified that he was not retired. In the August, 1986, hearing, he again stated that he was not retired and also expressed his willingness to accept a job within his physical limitations. The medical evidence reveals that his back condition worsened in April, 1985, supporting an inference that he was physically unable to seek employment.[2] Furthermore, his testimony that he had not withdrawn from the work force and would accept suitable employment was uncontroverted. Because that testimony, if believed, would show that he had not withdrawn from the work force, the issue of claimant's credibility is crucially important. Both referees expressly found him credible, and we generally give great weight to the referee's findings with respect to which credibility is an important issue. *Bush v. SAIF,* 68 Or App 230, 233, 680 P2d 1010 (1984).

On the basis of claimant's uncontroverted and credible testimony and the facts and circumstances of this case, we

---

issue in the first hearing. In the opinion and order, the referee stated:

> "I make no prospective decision on whether, if Mr. Davis does elect surgery that I have approved, his condition will have sufficiently worsened as to require reopening, or whether he is otherwise not entitled to time loss at that time."

Claimant was therefore not precluded from litigating the issue in the second hearing. *See Consolidated Freightways v. Poelwijk,* 81 Or App 311, 315, 726 P2d 379, *rev den* 302 Or 299 (1986).

[2] In early April, 1985, Dr. Smith examined claimant and noted that his back condition had worsened. Smith recommended a myelogram and a CT scan, which were performed in late April. In May, after reviewing the results of those tests, Smith recommended that a lumbar laminectomy and decompression at L4-5 and L5-S1 be performed. In June, Dr. Matteri, an orthopedist, examined claimant and noted that claimant's back condition had worsened somewhat. Matteri also stated that claimant was not then medically stationary. After reviewing the results of the myelogram and CT scan, Matteri was of the opinion that surgery would not benefit claimant. In August, after reviewing Matteri's reports, Smith reiterated his opinion that the surgery would benefit claimant. As noted, employer denied the compensability of the surgery in October, the referee set aside that denial in March, 1986, and the surgery was performed on May 1. It thus appears that claimant was seeking authorization for the surgery from the time when he stopped seeking employment until it was actually performed.

agree with the referee and the Board and find that claimant had not withdrawn, either voluntarily or involuntarily, from the work force and is entitled to TTD benefits during his post-surgical convalescence.[3]

Affirmed.

**GRABER, J.,** concurring in part, dissenting in part.

I concur in the majority's holding that the claim was properly reopened. However, I do not agree that claimant is entitled to temporary total disability benefits (TTD) and, to that extent, I respectfully dissent.

As the majority recognizes, claimant has the burden to establish his entitlement to TTD. *Smith v. SAIF,* 302 Or 396, 400-01, 730 P2d 30 (1986); *see also* ORS 656.266. He must "prove a willingness to seek work in order to obtain TTD benefits * * *." *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 300, 702 P2d 403 (1985). In my view, claimant failed to carry that burden. Accordingly, I would hold that he withdrew from the workforce before the surgery was recommended or performed and, therefore, that he is not entitled to TTD.

The majority relies on four things in reaching the conclusion that claimant remained in the workforce until the time of his surgery: his testimony that he had not "retired"; his testimony that he quit seeking work in April, 1985,[1] because his back hurt; his testimony that he would be willing

---

[3] In his opinion, the referee noted that claimant had applied for Social Security retirement benefits, possibly because we have previously relied on a claimant's application for those benefits as a factor in determining whether, for purposes of workers' compensation law, a claimant had retired. *See Sykes v. Weyerhaeuser Co.,* 90 Or App 41, 750 P2d 1171 (1988); *Karr v. SAIF,* 79 Or App 250, 719 P2d 35, *rev den* 301 Or 765 (1986). The Social Security law contemplates that a person receiving benefits may continue working. At the present time, a person claimant's age (over 62 but not yet 65 years of age) can earn approximately $6,000 annually and still be entitled to full Social Security retirement benefits. *See* 42 USC §§ 402, 403; 20 CFR §§ 415-417. The fact that a person has applied for or is receiving Social Security retirement benefits, although relevant, is not wholly dispositive in determining whether the person has withdrawn from the work force for the purposes of workers' compensation law.

[1] Only by giving claimant the benefit of the doubt can we find that he continued to look for work until April, 1985. At the second hearing, he listed a number of employers with whom he had sought jobs in 1983, 1984, and 1985. Five employers were listed with the notation "85." In the first hearing, claimant testified:

"Q. That's fine. Since April of 19— well, say, since April of 1985 have you

to accept a job within his physical limitations; and medical evidence that his back was worse in April, 1985, than in April, 1984, the time of the last arrangement of compensation (60 percent unscheduled permanent partial disability). Those factors do not lead to the majority's conclusion.

First, a claimant can withdraw from the workforce even if he does not consider himself to be "retired." Second, a person who withdraws from the workforce because of his physical condition nonetheless withdraws from the workforce. As we held in *Karr v. SAIF,* 79 Or App 250, 252-53, 719 P2d 35, *rev den* 301 Or 765 (1986):

> "Claimant asserts that he is entitled to time loss, because his retirement was not voluntary in that it was necessitated by his physical condition. Whatever the reason, claimant has withdrawn from the work force. Temporary total disability is awarded for lost wages, *see* ORS 656.210(1), and a person who has withdrawn from the work force has no lost wages. *Cutright v. Weyerhaeuser Co., supra,* 299 Or at 302."

---

been looking for work?

"A. No.

"Q. Why not?

"A. 'Cause my back's been bothering me so bad I couldn't.

"Q. Okay. Are you retired?

"A. Am I retired? Yes.

"Q. Are you retired? I mean —

"A. No. No, I'm not retired.

"Q. Okay.

"A. No. Excuse me. No, I'm not retired. No. * * *

"Q. When did you stop looking for work, sir?

"A. Oh, I'd say it was — oh, I don't know. Probably — oh, I don't know, May or June, someplace in there.

"Q. Of what year?

"A. Of '84.

"Q. So you looked for work a month or two in '84, and then just stopped?

"A. Yeah. It seemed like — can I say more?"

The topic changed at this point in transcript.

The first referee, whose order was not appealed, found that claimant "testified that he looked for work one or two months after April 1984 [the date of the stipulated Determination Order]." Claimant's various statements can be reconciled if he looked for work in 1983 and 1984 and contacted the five employers shown as "85" on the list at some time between January and April, 1985.

Third, a claimant who passively awaits a suitable job offer is not seeking work.

Finally, I do not agree that the medical evidence supports claimant's decision to cease looking for employment. Nothing in the record suggests that he acted on the advice of a physician, including the surgeon, in stopping his search for work. Although Dr. Smith noted in April, 1985, that claimant's back was "worse," there is no indication that he was not well enough to continue to look for light work. Indeed, nearly a year after he had ceased to look for work, the first referee found that the pre-surgery medical evidence did not establish an aggravation of claimant's condition since April, 1984, when he *was* looking for work. The rejection of claimant's applications for Social Security disability benefits before the surgery also suggests that he was not so incapacitated that he could not seek employment within the limits his doctors had specified. He ceased looking for work over a year before the surgery (using the majority's April, 1985, date), during a period when his then treating physician recommended against surgery and before the examining surgeon first suggested the operation.

In short, claimant's credibility does not dispose of the case, as the majority asserts. Even if his testimony is believed, the evidence is in conflict on the issue of withdrawal from the workforce. In my view, although the question is close, the analysis relied upon by the majority is not sufficient to sustain claimant's burden to prove TTD.