Argued and submitted October 30, 1995, affirmed January 24, 1996

In the Matter of the Compensation of
Timothy A. Bostick, Claimant.

Timothy A. BOSTICK,
*Petitioner,*

*v.*

RON RUST DRYWALL
and Liberty Northwest Insurance Corporation,
*Respondents.*

(WCB 93-05050; CA A84587)

909 P2d 904

Donald M. Hooton argued the cause for petitioner. With him on the brief was Schneider, Hooton.

David O. Wilson argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board classifying his claim as nondisabling and upholding employer's denial of benefits for temporary total disability. We affirm the Board and write only to explain our understanding of ORS 656.210(3).

On May 8, 1991, which was a Wednesday, claimant fractured his left fifth toe and sustained a cervical strain when a scaffold plank fell and hit him on the head and toe. He went to the emergency room on that day. The emergency room doctor told him that he could return to work on Wednesday, May 15. On Friday, May 10, claimant saw Dr. Eubanks, who released him to modified work on Monday, May 13. Saturdays and Sundays are claimant's regularly scheduled days off. It is not apparent from the record whether Eubanks was aware of that. On May 24, 1991, the insurer accepted a claim for a fractured toe as nondisabling. On August 7, 1992, it accepted a claim for cervical strain as nondisabling. On August 13, 1992, claimant requested reclassification of his claim to disabling.

Although the parties concerned themselves below with procedural issues regarding the reclassification, the only issue on review is whether the claim should be classified as disabling or nondisabling.

ORS 656.005(7)(c)[1] defines a disabling injury as

"an injury which entitles the worker to compensation for disability or death. An injury is not disabling if no temporary benefits are due and payable, unless there is a reasonable expectation that permanent disability will result from the injury."

OAR 436-30-045(5) also provides that a claim is disabling if temporary disability is due and payable.

ORS 656.210(3) provides:

"No disability payment is recoverable for temporary total or partial disability suffered during the first three calendar days after the worker leaves work or loses wages as a result of the compensable injury unless the worker is totally disabled

---

[1] Resolution of this case does not appear to be affected by 1995 amendments to the statutes.

after the injury and the total disability continues for a period of 14 consecutive days or unless the worker is admitted as an inpatient to a hospital within 14 days of the first onset of total disability. If the worker leaves work or loses wages on the day of the injury due to the injury, the day shall be considered the first day of the three-day period."

The subsection establishes a three-day waiting period for entitlement to benefits for temporary total disability. A worker is not entitled to begin receiving benefits for temporary disability unless the worker is disabled for more than three calendar days. Additionally, benefits for disability are not due for the first three calendar days of disability unless the worker is disabled for 14 consecutive days or more. Claimant does not argue that he is entitled to be compensated for the first three days of disability. Rather, he contends that his claim should be classified as disabling because he was unable to work on Saturday or Sunday, which were his days off. If his claim is classified as disabling, claimant can be eligible for benefits for permanent partial disability and vocational assistance.

The Board found that claimant was *off work* for three days, from Wednesday through Friday, implicitly finding that he had satisfied the three-day waiting period, but that he had not missed work on Saturday or Sunday. The Board found further that the record does not show whether claimant returned to modified work on Monday, May 13, or whether he continued to miss work for a period totaling 14 days. Those findings are supported by substantial evidence. The Board found, essentially, that claimant's first three days of disability were his only days of time loss and it held, accordingly, that claimant had failed to establish that he was entitled to benefits for temporary total disability. For that reason, the Board classified the claim as nondisabling.

From the parties' perspective, this case turns on the significance of the word "calendar" as used in ORS 656.210(3). Claimant asserts that the legislature's decision to describe the three-day waiting period as calendar days shows an intention that benefits for time loss be paid for calendar days, whether or not those days were also work days. Under claimant's analysis, the Saturday and Sunday preceding his

release for work should be counted in determining the duration of his disability. Employer contends that, although the legislature chose the word "calendar," it could not possibly have intended that compensation be paid for calendar days when those are not also work days and that, because claimant has not shown that Saturdays and Sundays are his work days, he has had no time loss.

■■ We first examine the text and context of the statute. As pertinent, ORS 656.210 provides:

"(1) When the total disability [due to a compensable injury] is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 100 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. * * *

"(2)(a) For the purpose of this section, the weekly wage of workers shall be ascertained by multiplying the daily wage the worker was receiving by the number of days per week that the worker was regularly employed.

"(b) For the purpose of this section:

"(A) The benefits of a worker who incurs an injury shall be based on the wage of the worker at the time of injury.

"(B) The benefits of a worker who incurs an occupational disease shall be based on the wage of the worker at the time there is medical verification that the worker is unable to work because of the disability caused by the occupational disease. If the worker is not working at the time that there is medical verification that the worker is unable to work because of the disability caused by the occupational disease, the benefits shall be based on the wage of the worker at the worker's last regular employment.

"(c) As used in this subsection, 'regularly employed' means actual employment or availability for such employment. For workers not regularly employed and for workers with no remuneration or whose remuneration is not based solely upon daily or weekly wages, the Director of the Department of Consumer and Business Services, by rule, may prescribe methods for establishing the worker's weekly wage.

"(3) No disability payment is recoverable for temporary total or partial disability suffered during the first three

calendar days after the worker leaves work or loses wages as a result of the compensable injury unless the worker is totally disabled after the injury and the total disability continues for a period of 14 consecutive days or unless the worker is admitted as an inpatient to a hospital within 14 days of the first onset of total disability. If the worker leaves work or loses wages on the day of injury due to the injury, that day shall be considered the first day of the three-day period."

The first two subsections of the statute are concerned primarily with determining the basic measure of time loss benefits, the weekly wage of the worker. Subsection (3) describes the three-day waiting period, during which no benefits are due unless the worker is disabled for 14 consecutive days or more. The statute unambiguously describes the waiting period as three *calendar* days. There can be no reasonable dispute that the waiting period itself is to be based on calendar days. If a worker is injured on Friday and remains disabled on Saturday and Sunday, even if those days are not regular work days, the worker has satisfied the three-day waiting period and is entitled to begin receiving benefits on Monday. Additionally, we agree with claimant that ORS 656.210(3) also plausibly suggests that if the worker is disabled for 14 days, then benefits are payable for the first three calendar days of disability, irrespective of whether those days were work days.

■■ However, neither the statute nor the administrative rules expressly address the precise issue about which these parties dispute: whether a worker who remains disabled *subsequent* to the three-day waiting period is entitled to benefits for calendar days of disability that are not also work days. Claimant contends that the use of the word "calendar" in subsection (3) suggests that time loss benefits are paid for calendar days of disability. Admittedly, the legislature's choice of the word "calendar" to describe the waiting period creates some ambiguity. If the statute can be understood to provide that benefits are to be paid for the first three calendar days of disability, why then does it not also mean that all benefits for temporary disability are based on calendar days?

The context of the ORS 656.210(3) suggests that the legislature did not intend to establish that benefits for time loss be paid for calendar days. Under the statute, the weekly benefits of a worker depend on the number of days regularly

worked. For example, subsection (2) provides that the worker's weekly wage is to be calculated based on the daily wage multiplied by the number of days regularly worked. That language suggests, but does not expressly provide, an answer to our dilemma. If weekly benefits are to be calculated based on number of work days, then should they not also be paid just for days lost from work?

To the extent that the statute's text and context leave room for doubt, the legislative history is helpful. Before 1969, the three-day waiting period was described in what is now subsection (3) as "three days." In 1969 the legislature amended ORS 656.210 for the sole purpose of adding the word "calendar" before "days." The testimony of Senator Atiyeh before both the Senate Labor and Industries Committee and the House Labor and Management Committee shows that the term "three days" was being interpreted by the Board as three *work* days and that that interpretation created some inequities among workers who were disabled for fewer than 14 days. Workers who were injured at the beginning of their work week and who were disabled for more than three days could begin collecting benefits on the fourth day of their actual disability if that day also happened to be a work day. Workers who were injured toward the end of their work week and whose first three days of disability fell partly over the weekend effectively had a longer waiting period, because they could not begin receiving benefits until they were disabled for three work days. To correct the inequity in the waiting period, Senator Atiyeh suggested amending the statute to make the waiting period three *calendar* days. Minutes, House Committee on Labor and Management, March 26, 1969; Minutes, Senate Committee on Labor and Industries, April 18, 1969. The amendment was unopposed and was passed by both houses with little discussion.

There is no suggestion in the legislative history that the bill was intended to do more than establish that the *waiting period* be based on calendar days rather than work days. There is no indication that the amendment was intended to affect the way that benefits are paid or to require that they be *paid* for calendar days. It is true that in this case, if claimant had been injured on a Monday or Friday instead of a Wednesday, he would have been eligible for two days of

disability benefits if he had remained disabled for five days. There is no suggestion in the legislative history that the goal of the amendment was to correct that inequity. We conclude that, if a worker is disabled for less than a full work week, the fraction of the worker's weekly wage to which the worker is entitled is to be calculated based only on work days missed.

■ Our interpretation of the statute is consistent with case law holding that benefits for temporary total disability exist for the purpose of compensating a worker for wages lost because of an inability to work. *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 702 P2d 403 (1985); *Stiennon v. SAIF*, 68 Or App 735, 738, 683 P2d 556, *rev den* 298 Or 238 (1984). If the worker fails to show lost time from work as a result of the disability, then the worker has failed to establish entitlement to benefits for time loss. In this case claimant has not shown that his fourth and fifth days of disability were work days; therefore, he has not shown that he lost time from work as a result of his disability in excess of the three-day waiting period. The Board correctly held that he has failed to establish that his claim is disabling.

Claimant did not raise his argument in support of his second assignment of error before the Board and we will not consider it.

Affirmed.