Argued and submitted March 1, reversed; referee's order reinstated May 22, 1985

In the Matter of the Compensation of
Wayne A. Volk, Claimant.

**VOLK,**
*Petitioner,*

*v.*

**STATE ACCIDENT INSURANCE FUND
CORPORATION,**
*Respondent.*

(83-04354; CA A32948)

700 P2d 673

Quintin B. Estell, Salem, argued the cause and filed the brief for petitioner.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant seeks judicial review of an order of the Workers' Compensation Board which denied his claim for penalties and attorney fees for SAIF's allegedly premature closure of his case and termination of his temporary total disability and medical benefits. The referee had awarded penalties and attorney fees. Claimant asserts that SAIF terminated benefits before his attending physician released him for a return to his regular employment and before there was a determination order finding him medically stationary. SAIF therefore acted, claimant argues, before it had the legal right to do so. We agree that SAIF's actions were improper and reinstate the referee's order.

Claimant works in heavy construction. He injured his back in July, 1982. He received chiropractic treatment from Dr. Nickila for that injury. In October, 1982, SAIF referred him to Dr. Murphy, an orthopedist, for evaluation. In November, Nickila referred him to Dr. Buza, a neurosurgeon, for consultation. Buza ordered certain tests and continued to follow claimant's progress after the original examination; however, Nickila remained claimant's primary treating physician. Claimant's condition improved with continued treatment. Nickila had released him for light duty work on October 4, 1982, before either medical examination. In January, 1983, Nickila stated that claimant was medically stable but continued to be available only for light work. Because claimant's employer had no light duty work available, claimant did not actually return to work.

Murphy saw claimant a second time on February 25, 1983. In his report, dated March 7, 1983, he stated that claimant had improved sufficiently to return to his regular work. He did not say that claimant was then medically stationary, but he believed "that 4 to 6 weeks *after he returns to his job,* he may be declared medically stationary. An impairment should be rated at that time. I would anticipate none." (Emphasis supplied.) Murphy also said that claimant "should be evaluated periodically after he returns to work to determine that he is indeed able to perform his construction work." SAIF sent a copy of Murphy's report to Buza, who responded on April 11, 1983, that he concurred with Murphy

"that the patient can return to regular work, that is, within

4-6 six weeks after Dr. Murphy has seen the patient which is about the 7th of April, and at the time of this letter. I believe that he is medically stationary *if there has [sic] not been any interim changes since he was last seen at this office.*" (Emphasis supplied.)

◾ Neither Murphy nor Buza considered claimant medically stationary at the last time they saw him; they only believed that he would probably be stationary at some later date. Both implicitly assumed that claimant would return to work for a trial period before being found medically stationary. Nevertheless, SAIF terminated claimant's benefits on April 7, 1983. Its action in doing so was unreasonable for two reasons. First, it acted before claimant's attending physician—Nickila—approved his return to his regular employment and before the issuance of a determination order. Second, it unreasonably misread Murphy's and Buza's statements as unequivocal findings that claimant was stationary rather than as predictions that he probably would be stationary if he had no difficulties after several weeks of his normal work.

ORS 656.268(2) provides in part:

"If the attending physician has not approved the worker's return to the worker's regular employment, *the insurer or self-insured employer must continue to make temporary total disability payments until termination of such payments is authorized* following examination and the medical reports submitted to the Evaluation Division under this section." (Emphasis supplied.)

The "attending physician" is the "doctor or physician who is primarily responsible for the treatment of a worker's compensable injury." ORS 656.005(13). Nickila was claimant's attending physician. He had not released claimant to return to his regular employment. There was no determination order until May 12, 1983. SAIF was without authority to terminate claimant's benefits before then. *See Scheidemantel v. SAIF,* 68 Or App 822, 824-25, 683 P2d 1028, *modified* 70 Or App 552, 690 P2d 511 (1984).

◾ Even if SAIF's closure were proper procedurally, it was wrong in substance. There is no substantial evidence to support SAIF's conclusion that claimant was medically stationary and that he had no permanent disability. Before an

insurer may close a claim without a determination order, it must reach both conclusions. If there is no substantial evidence in support of those conclusions, the insurer is liable for a penalty if it closes the claim without a determination order. ORS 656.268(3).[1] Although Nickila indicated in January that claimant was medically stationary, he released claimant only for light work and stated that claimant had periods of remission and exacerbation of his problem. If SAIF accepted Nickila's opinion, it must necessarily have concluded that there would be permanent partial disability.

Neither do the reports of the other physicians support SAIF"s action. Murphy and Buza did not find claimant stationary when Nickila did. Indeed, they did not find him *presently* stationary at all. Murphy's report suggested a probable future stability, but he clearly was predicting the future rather than describing a present condition. In addition, his prediction was based on claimant's returning to his regular work without problems in the interim. SAIF knew that claimant had not returned to work and that Nickila had not released him to do so. Buza's report simply agreed with Murphy's, and Buza was unaware of what might have happened to claimant in the period since he last saw him. SAIF had no basis for concluding that claimant was *both* medically stationary and had suffered no permanent disability. SAIF is liable for the penalty provided in ORS 656.268(3) for a premature closure and is liable for an award of attorney fees.[2]

Reversed; referee's order reinstated.

---

[1] ORS 656.268(3) provides, in pertinent part:

"If an insurer or self-insured employer has closed a claim pursuant to this subsection, if the reasonableness of that closure decision is at issue in a hearing on the claim and if a finding is made at the hearing that the closure decision was not supported by substantial evidence, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be owing between the date of original closure and the date upon which the claim is closed by determination order. The penalty shall not be less than $500."

[2] The record contains considerable evidence about the the reasons for the various physicians' opinions and about developments after SAIF closed the claim. The parties argue the effect of that evidence. It is irrelevant to the issue on appeal, which is whether SAIF had substantial evidence to act as it did. The answer to that question necessarily depends on what SAIF knew at the time it acted.