Argued and submitted July 7, remanded to Court of Appeals for reconsideration
November 17, 1987

In the Matter of the Compensation of
William R. Gwynn, Claimant.

GWYNN,
*Petitioner on Review,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents on Review.*

(WCB 84-11354; CA A38534; SC S33828)

745 P2d 775

Ronald L. Bohy, Salem, argued the cause and filed the petition for petitioner on review.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents on review.

Before Peterson, Chief Justice, and Lent, Campbell, Carson, Jones and Gillette, Justices.

LENT, J.

## LENT, J.

The issue is whether an award of compensation for permanent partial disability that is based in part on a prediction that from time to time "future symptomatic flareups" will occur precludes an award of compensation under ORS 656.273(1) for such flareups even if they produce greater disability than that for which the original award was made.[1] We hold that it does not.

Claimant, who had received a workers' compensation award for unscheduled permanent partial disability, filed a claim under ORS 656.273 with respondent State Accident Insurance Fund (SAIF).[2] SAIF denied the claim. On judicial review on the record forwarded by the Workers' Compensation Board (Board), the Court of Appeals affirmed the denial, finding that "[c]laimant's symptoms resulting in time loss were anticipated at the time of the last arrangement of compensation." *Gwynn v. SAIF,* 84 Or App 67, 69, 733 P2d 895 (1987).

We take as facts those that are undisputed or found by the Court of Appeals. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 568-69, 491 P2d 997 (1971). Claimant injured his back in 1981 while working as a mechanic for respondent Siletz Trucking Company. Chronic pain from the injury eventually forced him to quit his job, which required him to lift and to manipulate heavy equipment. His physician recommended that he accept only "light duty" work, *i.e.,* work not involving lifting more than 40 pounds or otherwise placing a significant strain on his back.

His claim was first closed in March 1982 without any award of compensation for permanent disability. Some time later claimant filed a claim for additional compensation for

---

[1] ORS 656.273(1) provides:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury."

[2] The permanent partial disabilities listed in ORS 656.214(2) to (4) are commonly called "scheduled" disabilities. All other permanent partial disabilities are called "unscheduled" disabilities and are rated by the permanent loss of earning capacity due to a compensable injury. "Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills and work experience." ORS 656.214(5).

worsened conditions resulting from his 1981 injury. ORS 656.273(1). SAIF, Siletz Trucking Company's insurer, denied this claim in June 1983 but later settled the claim. The settlement agreement stated in relevant part:

> "IT IS HEREBY STIPULATED AND AGREED between the parties that all issues raised or raisable at this time may be fully compromised and settled by SAIF Corporation paying to the claimant and the claimant accepting an award of 64 degrees for 20 percent unscheduled permanent partial disability for injury to his dorso lumbar spine, * * * that in consideration of the increased compensation, claimant acknowledges full compensation for the above-described injury to his dorso lumbar spine and all related complaints thereto, and further agrees that the pending Request for Hearing may be dismissed with prejudice."

The settlement was approved by a Board referee on December 21, 1983. ORS 656.289(4).

In November 1983, claimant accepted from another employer a job that he believed would involve supervisory work without heavy lifting. The job proved to require frequent lifting well beyond the 40-pound limit imposed by his physician. After pain again forced him to quit work in July 1984, he sought compensation for temporary total disability by filing with SAIF a second ORS 656.273(1) "claim for aggravation" of his original back injury.

A claim for aggravation must be based on "worsened conditions" since the last award or arrangement of compensation. ORS 656.273(1). SAIF denied this aggravation claim because it concluded that claimant had not shown that his condition was "objectively worse" than at the time of his permanent partial disability award. Following a hearing on the claim in May 1985, the referee affirmed the denial and on review the Board affirmed the referee's order. The Board stated:

> "The evidence persuades us that following the last arrangement of compensation, claimant experienced a mere exacerbation of symptoms without a worsening of his underlying condition. While a symptomatic worsening alone can represent a compensable claim under the proper facts, * * * it is generally not sufficient if the claimant has received an award of permanent partial disability that takes into account future symptomatic flare-ups. * * * In the present case, claimant has

received an award of 64 degrees for 20 percent unscheduled permanent partial disability for the low back. We find that this award contemplated future symptomatic exacerbations."

The Board did not identify the evidence on which it found that the award "contemplated future symptomatic exacerbations."

On judicial review, the Court of Appeals affirmed the Board's decision: "On *de novo* review, we find that claimant has not suffered a worsening of his condition that would qualify as an aggravation under ORS 656.273. Claimant's symptoms resulting in time loss were anticipated at the time of the last arrangement of compensation." *Gwynn*, 84 Or App at 69. The court, in contrast to the Board, did not find that the *award* contemplated claimant's symptoms; rather, the court found that the symptoms were anticipated *at the time of* the award. From a later statement in its opinion, we infer that the court would find that symptoms were "anticipated" at the time of the award whenever it was then "knowable that the claimant will experience a waxing and waning of symptoms or that certain activities will activate symptoms." 84 Or App at 71. We further infer from this statement that the Court of Appeals found no worsening of claimant's condition because it concluded that the pain that forced him to leave work was caused by exceeding the work limits recommended by his physician at the time of his permanent partial disability award.

It is not this court's function to determine the facts in workers' compensation cases; on judicial review, that function belongs to the Court of Appeals. *Sahnow v. Fireman's Fund Ins. Co., supra.* Whether a claimant's condition has "worsened" is a question of fact, and we express no opinion on that issue in this case. Our intention is only to clarify the legal premises on which that factual determination must be made.

The Board found that claimant's condition was not worse because his permanent partial disability award "contemplated" his "future symptomatic exacerbations."[3] Whether a claimant's condition has worsened is a question,

---

[3] We cannot tell from the record what evidence led to that statement. Claimant's permanent partial disability award was based entirely on an agreement with SAIF. The agreement does not state that the award was intended to compensate "future symptomatic exacerbations," and we find no extrinsic evidence in the record from which this intention can be inferred.

the answer to which cannot turn on factors which have nothing to do with the condition of claimant's body.

The Court of Appeals' finding that at the time of the award it was "knowable" that claimant would experience a "waxing and waning" of symptoms tells us nothing more than that. It does not tell us that this quality of being knowable was taken into consideration in reaching the agreement that produced an award of 64 degrees for unscheduled permanent partial disability. If it did, it would be subject to the same criticism as is the Board's finding, *i.e.,* on what evidence would it rest?

We shall assume, *arguendo,* that there was evidence to support a finding that the amount of the award of compensation for unscheduled permanent partial disability was predicated in part at least on the fact that from time to time in the future claimant's physical condition or symptoms would become exacerbated to the extent of temporarily diminishing his earning capacity. That being so, how great a diminishment and of what duration will support an award of additional compensation under ORS 656.273?

We commence with the reminder that there are four types of disability for which compensation is awarded. They are: (1) temporary partial disability, ORS 656.212; (2) temporary total disability, ORS 656.210; (3) permanent partial disability, ORS 656.214; and (4) permanent total disability, ORS 656.206. Any disability can only be classified at any one time under one of those headings because each is exclusive of any other. Of these we shall not discuss temporary partial disability because it is not involved in this case.

Permanent total disability "means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation," which is one that "the worker has the ability and the training or experience to perform, or [one] which the worker is able to perform after rehabilitation." ORS 656.206(1)(a).

Temporary total disability is not defined by statute. In *Cutright v. Weyerhaeuser Co.,* 299 Or 290, 295, 702 P2d 403

(1985), we stated that the adjectives "permanent" and "temporary" describe duration, not the extent, of disability. "Partial" and "total" describe extent. It follows that if a worker meets the test of being totally disabled but that it cannot be said that the disability is permanent, that worker is temporarily totally disabled.

If a worker is permanently disabled but not to the extent of being totally disabled, as the statute defines total disability, that worker must be permanently partially disabled. The fact that the worker is not totally disabled excludes the worker from the class of those permanently totally disabled, and either the fact that the disability is permanent or that it is not total excludes the worker from the class of those temporarily totally disabled.

To be a bit redundant but to emphasize a point, one who is only temporarily disabled cannot fall into either class of permanent disability.

When a worker sustains an accidental injury arising out of and in the course of employment that requires either medical services or results in disability, the worker has sustained a compensable injury for workers' compensation purposes. ORS 656.005(8). Putting aside nondisabling compensable injuries and injuries only temporarily partially disabling, this court ordinarily sees cases in which a worker has been temporarily totally disabled for at least a short time. Compensation is payable for the worker's temporary total disability according to the terms of ORS 656.210(3).[4]

Let us assume that a claim for payment of compensation has been made for temporary total disability. When no further material improvement may reasonably be expected from medical treatment, the worker is medically stationary. ORS 656.005(17). If at that point the worker is not enrolled and actively engaged in training, the extent of permanent disability, if any, may be fixed in any one of the several ways

---

[4] ORS 656.210(3) provides:

"No disability payment is recoverable for temporary total disability suffered during the first three calendar days after the worker leaves work as a result of the compensable injury unless the total disability continues for a period of 14 days or the worker is an inpatient in a hospital. If the worker leaves work the day of the injury, that day shall be considered the first day of the three-day period."

described in the Workers' Compensation Law. In this case no award for permanent disability was made on original closure, but when claimant filed a claim under ORS 656.273, he and the insurer agreed by way of settlement that he had an unscheduled permanent partial disability equal to 64 degrees, and the referee approved that settlement. Both the worker and the insurer were bound by that agreement. As noted above, we shall assume, *arguendo,* that both parties agreed that a part of the award was based on the fact that following the time of settlement, from time to time claimant's physical condition or symptoms would become exacerbated or even lessened, *i.e.,* that there would be some "waxing and waning."

■ ■  Compensation is not payable under the Workers' Compensation Law for symptoms alone, but to the extent that symptoms, such as pain, dizziness, nervousness, etc., cause loss of function of the body or its parts and, in the case of unscheduled disability, resulting loss of earning capacity, the disabling effects of the symptoms are to be considered in fixing awards for disability. *See Harwell v. Argonaut Insurance Co.,* 296 Or 505, 509-11, 678 P2d 1202 (1984); *Weller v. Union Carbide,* 288 Or 27, 34-35, 602 P2d 259 (1979). The mere "waxing" of a physical condition or of a symptom, whether or not anticipated, will not amount to a worsening sufficient to satisfy the requisites for a claim under ORS 656.273. But what if the waxing results in a greater disability?

If waxing continues to the point where the worker is incapacitated from regularly performing work at a gainful and suitable occupation, by definition the worker is totally disabled. It is logically inescapable that this is a worsening. If the worker is totally disabled, the worker becomes entitled to compensation for either temporary or permanent total disability.

If waxing continues to the point where the worker's condition falls short of total disability, as statutorily defined, but becomes medically stationary at an extent greater than previously awarded, this too must be a worsening, for the worker's loss of capacity to earn has been increased.

Again, if we assume that the award of 64 degrees was predicated on anticipation that there would be some short periods of time in which claimant's physical condition would worsen or symptoms would flare up, or wax, and then subside, it would not be fair to the insurer, nor do we perceive that the

law requires, that payment of additional compensation for such short periods should be ordered. On the other hand, if claimant's physical condition worsens or the symptoms of his injury produce a greater disability for more than the short time anticipated, the law does require additional compensation.

The question is how to draw the line between the period of incapacity that will justify payment of compensation and that which constitutes a mere flareup that has been taken into consideration by the fixing of the existing award. We conclude that ORS 656.210(3) provides a model. If the worker, as a result of worsening of the worker's condition from the original injury, becomes totally disabled for more than 14 consecutive days or becomes an inpatient at a hospital for treatment of that condition, the worker is at least entitled to compensation for temporary total disability. If inpatient treatment is required or a flareup exceeds such 14-day period, when the worker's medical condition becomes stationary, the worker's degree of permanent disability must be fixed in one of the ways prescribed by the Workers' Compensation Law, and if that disability exceeds 64 degrees or is total, the appropriate award must be made.

This case is remanded to the Court of Appeals to determine on the evidence whether "waxing and waning" was anticipated and figured in arriving at 64 degrees of disability in this case. If not, that factor is not to be taken into account in deciding this case. If it was anticipated, the court is to decide whether claimant is entitled to any additional compensation under the guidelines herein stated.

Remanded for further consideration.