Argued and submitted October 16, 1987, affirmed on petition, Board order reversed on cross-petition, otherwise affirmed January 27, 1988

In the Matter of the Compensation of
Richard G. Surprise, Claimant.
WEYERHAEUSER COMPANY,
*Petitioner - Cross-Respondent,*

*v.*

SURPRISE,
*Respondent - Cross-Petitioner.*
(WCB 85-03495; CA A42210)
748 P2d 1024

Paul L. Roess, Coos Bay, argued the cause for petitioner -

cross-respondent. With him on the brief was Foss, Whitty & Roess, Coos Bay.

James L. Edmunson, Eugene, argued the cause for respondent - cross-petitioner. With him on the brief were Karen M. Werner and Malagon & Moore, Eugene.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

WARDEN, P. J.

---

* Joseph, C. J., *vice* Young, J., deceased.

## WARDEN, P. J.

Employer seeks review of a Workers' Compensation Board order which affirmed the referee in setting aside employer's denial of responsibility for claimant's treatment at a pain center and ordering employer to pay temporary total disability (TTD) for the period of claimant's treatment. Claimant, in his cross-petition, seeks review of the Board's reversal of a portion of the referee's order which had awarded penalties and attorney fees for employer's allegedly improper claim closure, of the Board's reduction of his unscheduled permanent partial disability (PPD) award from 20 percent to 10 percent and of the Board's refusal to set aside the Evaluation Division's allegedly premature closure of the claim. We affirm on the petition; on the cross-petition, we reverse in part.

In May, 1983, claimant injured his lower back when he slipped in an oil puddle at work. Dr. Bert, an orthopedist, treated him; Dr. Bernstein, a neurologist, also saw him once for a consultation. In December, Bert performed a laminectomy and partial diskectomy at the L4-5 level. Claimant's recovery was uneventful. In October, 1984, Bert reported that claimant had permanent limitations with respect to lifting, carrying, bending, squatting, climbing, crawling and reaching. In November, however, Bert reported that claimant had made a complete recovery with only minimal discomfort in his back. He released claimant for work with no restrictions as of November 19, 1984.[1]

On November 28, 1984, employer sent claimant a Notice of Claim Closure, advising him that he was entitled to an award of TTD from June 1, 1983 to November 16, 1984, but that he was not entitled to an award of PPD. In December, 1984, claimant saw Bernstein, complaining of lower back pain. Bernstein wrote employer and suggested that claimant be retrained for lighter work. He limited claimant to lifting and carrying no more than 10 pounds on a regular basis, with occasional lifting and carrying of 20 pounds. Claimant saw Bernstein several times over the next few months and

---

[1] Claimant did not actually return to work, despite having been declared medically stationary, because employer had sold the mill where he had been employed and there was no work to which he could return.

received various forms of conservative treatment, including pain medication and the application of heating pads. In March, 1985, Bernstein reported that it was "time that we start thinking in terms of pain clinic referral."

The Evaluation Division reviewed employer's notice of claim closure pursuant to ORS 656.268(3)[2] (since *amended by* Or Laws 1987, ch 884, § 10). On March 28, 1985, it issued a determination order awarding claimant TTD from May 31, 1984, through November 18, 1984, and 5 percent unscheduled PPD for his lower back.

Bernstein referred claimant to the Western Pain Center in Roseburg. Employer, however, denied responsibility for the program on the ground that it was not reasonable and necessary treatment. Claimant nevertheless participated in the program from May 20, 1985, through June 6, 1985, and his condition improved significantly.

■ Claimant sought a hearing on the extent of PPD, employer's denial of responsibility for the WPC treatment and his claim for penalties and attorney fees for employer's allegedly improper closure of the claim. The referee increased the PPD award to 20 percent and found for claimant on the other issues as well. The Board reduced the PPD award to 10 percent and denied penalties and attorney fees for employer's claim closure. On review, employer contends that the Board erred in finding the pain center program to be reasonable and necessary treatment. On *de novo* review, we agree with the referee and the Board that the treatment was both reasonable and necessary.

■ Employer also contends that the Board erred in awarding claimant TTD for the period during which he was treated at the pain center, because claimant was released to return to all usual and customary work with no impairment as of November 19, 1984. We disagree. A worker is entitled to TTD during periods of total disability. ORS 656.210(1); *see Gwynn v. SAIF,* 304 Or 345, 745 P2d 775 (1987). Claimant began to see Bernstein soon after Bert released him for work, because of his continuing pain, and, at Bernstein's suggestion,

---

[2] The record does not directly indicate that claimant requested review by the Evaluation Division. However, a request for review from a claimant is the only statutory basis for Evaluation Division involvement.

he eventually entered a treatment program which required full-time participation. That participation rendered him unavailable for work. *See Smith v. SAIF*, 302 Or 396, 400-401, 730 P2d 30 (1986). We need not find that claimant was physically unable to do his customary work if he had been available. As the referee said:

> "[D]uring this time claimant would not have been able to work at the job he held at the time of his injury, either at Weyerhaeuser (if the mill had been open) or elsewhere * * *. I .find the Pain Center treatment to be compensable. Thus, claimant is entitled to [TTD] during the period of this treatment."

Employer would have us distinguish between a claimant who is *physically unable* to work and one who, because of necessary treatment, is unavailable to go to work. We refuse to do so. A claimant who must undergo full-time treatment is physically unable to have regular employment at the same time. When the treatment is a consequence of a compensable injury, that physical inability is also a result of the injury. The purpose of TTD is to replace income lost as a result of injury; to deny it in these circumstances would defeat the statutory purpose.[3] Because, as we hold below, the closure of March 18, 1985, was premature, there is no issue of whether the PPD award contemplated this period of temporary disability. *See Gwynn v. SAIF, supra*, 304 Or at 352-353.

■ On cross-petition, claimant asserts that the Board erred in reversing the referee's award of penalties and attorney fees for employer's alleged improper claim closure. The referee held that Bert's November 14, 1984, report would have constituted substantial evidence in support of closure but for the claimant's back surgery. The referee stated:

> "Pursuant to [OAR 436-30-490(2)(a)] [the laminectomy and partial diskectomy] *in and of itself* constituted the basis for some permanent impairment which, along with the non-medical factors that are considered in rating unscheduled permanent partial disability, would entitle claimant to a permanent partial disability award at the Evaluation Division level." (Emphasis supplied.)

---

[3] The legislature has resolved this issue for future cases. ORS 656.210(4), effective January 1, 1988, provides that a worker is entitled to TTD for treatment-related absences from work of four hours or more, unless the employer pays wages for the period of absence.

Although the guidelines for rating PPD in the administrative rules do not control the decision of a referee, the Board, or this court, *SAIF v. Baer,* 61 Or App 335, 337, 656 P2d 959, *rev den* 294 Or 749 (1983), they *do* control the Evaluation Division. By issuing its own closure, employer placed on claimant the burden of obtaining a PPD award from the Division when employer should have known that claimant was entitled to one. When the Division did order an award, employer did not challenge it. There was no substantial evidence that the claim could be closed without an award of PPD before review by the Division. The referee correctly awarded penalties and attorney fees. *Former* ORS 656.268(3) (*amended by* Or Laws 1987, ch 884, § 10); *see Volk v. SAIF,* 73 Or App 643, 700 P2d 673 (1985).

Claimant also seeks review of the Board's reduction in the PPD awarded him by the referee. We see no reason to disagree with the Board's evaluation and therefore affirm.

Finally, claimant attacks the March 18, 1985, claim closure as premature. As employer notes, if the pain center treatment was reasonable and necessary in order for his condition to improve, the closure was premature. At the time of closure, claimant had continuing and disabling pain; the treatment significantly reduced it. We have found the treatment to be compensable and, therefore, we reverse the Board's action upholding the closure.[4]

Affirmed on petition; on cross-petition, Board order upholding closure by the determination order of March 28, 1985, reversed; referee's award of penalties and attorney fees for improper claim closure of November 28, 1984, reinstated; otherwise affirmed.

---

[4] We agree with the referee that claimant has not shown an entitlement to TTD from November 19, 1984, to May 19, 1985, despite the premature claim closure.